Priority
Send Enter
JS6

# ORIGINAL



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 20 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELAINE L. CHAO,** Secretary of Labor, United States Department of Labor, ) | **CASE NO. CV 06-3903 AG (MANx)** |
| ) | |
| **Plaintiff,** ) | ~~[TENTATIVE]~~ **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. ) | |
| **SOUTHERN CALIFORNIA MAID SERVICE AND CARPET CLEANING, INC.,** a California Corporation; ) | |
| **SERGIO MALDONADO,** individually and as a managing agent of the corporate defendant; ) | **THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).** |
| **LORENZA RUBIO,** individually and as a managing agent of the corporate defendant; ) | |
| **Defendant(s).** ) | |



ENTERED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 2 1 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

The Court considers a Motion for Summary Judgment ("Motion") filed by Plaintiff Elaine L. Chao, Secretary of Labor, United States Department of Labor ("Plaintiff") against Defendants Southern California Maid Service and Carpet Cleaning, Inc., Sergio Maldonado, and Lorenza Rubio (collectively referred to as "Defendants"). Defendant Southern California Maid Service and Carpet Cleaning, Inc. ("SCMS") is a California corporation that provides house and carpet cleaning services. (Answer ¶ 2.) From March 14, 2003 to the present, Defendants Sergio

24

1 | Maldonado ("Maldonado") and Lorenza Rubio ("Rubio") were corporate officers of SCMS.

2 | (Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Plaintiff's P&A's"),

3 | Ex. 3 at RFA No. 2.) Plaintiff argues that Defendants violated several FLSA provisions by

4 | underpaying their workers and by failing to maintain complete and accurate time and payroll

5 | records for them.

6 | Defendants failed to file a timely opposition to Plaintiff's Motion. Thus, the Court

7 | considers the Motion to be unopposed. Local R. 7-12. After considering the moving papers and

8 | evidence submitted therewith, the Court GRANTS the Motion.

9

10 | **BACKGROUND**

11

12 | Plaintiff brought this action against Defendants on behalf of SCMS' housecleaning

13 | workers ("Cleaners"). Plaintiff's complaint alleges that Defendants violated the Fair Labor

14 | Standards Act of 1938, *as amended*, 29 U.S.C. section 201, *et seq.* ("FLSA"). Specifically,

15 | Plaintiff alleges that Defendants violated the minimum wage, overtime, and recordkeeping

16 | provisions of the FLSA at 29 U.S.C. sections 206(a)(1), 207(a)(1), 211(c), 215(a)(2) and (a)(5).

17 | The alleged violations took place between March 14, 2003 and the present. (Plaintiff's P&A's

18 | 11:19.) Plaintiff seeks (1) to recover back wages and liquidated damages owed to Defendants'

19 | employees for the relevant period and (2) to enjoin Defendants from future violations of the

20 | FLSA. (Plaintiff's P&A's 10:7-13.)

21 | On December 29, 2006, Plaintiff's counsel served a Request for Admissions ("RFA") on

22 | Defendants' counsel. (Declaration of Susan Seletsky ("Seletsky Decl.") ¶ 3.) Defendants failed

23 | to respond. (Seletsky Decl. ¶ 4.) Under Federal Rule of Civil Procedure 36, unanswered RFA's

24 | are deemed admitted and conclusively established. Fed. R. Civ. P. 36. Unanswered requests for

25 | admissions may properly serve as the basis for granting summary judgment. *Conlon v. United*

26 | *States*, 474 F.3d 616, 621 (9th Cir. 2007).

27 | //

28 | //

2

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule is underscored by Rule 56(e), which provides that where a motion for summary judgment is unopposed, "summary judgment, if appropriate, shall be entered against the adverse party." A district court "[is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991). Thus, a court may grant summary judgment when the unopposed moving papers are sufficient on their face to show that no issues of material fact exist. *See Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993).

**DISCUSSION**

1.      **APPLICABILITY OF THE FLSA**

The FLSA provides for recovery of unpaid minimum wages, unpaid overtime compensation, and liquidated damages owed to covered workers. To fall within the purview of the FLSA provisions allegedly violated by Defendants, the Cleaners must be employees of an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Thus, to determine that the FLSA protects the Cleaners and applies to Defendants' actions as employers, the Court must consider whether the Cleaners were employees of employers who operated a commercial enterprise.

//

//

//

1

### 1.1    Employees

2

3        First, the Court considers whether the Cleaners are employees under the statute.  In their

4   Answer, Defendants claimed that the FLSA does not apply to the Cleaners because they are

5   independent contractors, not employees, and independent contractors are excluded from the

6   FLSA.  (Answer of the Defendants Southern California Maid Service and Carpet Cleaning, Inc.,

7   Sergio Maldonado, and Lorenza Rubio to Complaint ("Answer") ¶ 11.)  Here, Plaintiff claims

8   that the Cleaners are employees, and that SCMS "misclassifies its employees as independent

9   contractors." (Plaintiff's P&A's 19:10-12.)  Whether an individual is an "employee" within the

10  meaning of the FLSA is a legal question. *Morrison v. International Programs Consortium, Inc.*,

11  253 F.3d 5, 10 n.3 (D.C. Cir. 2001).  By not responding to Plaintiff's RFA No. 40, Defendants

12  admitted that all Cleaners were employees of SCMS at all relevant times.  Thus, the Court finds

13  that the Cleaners are employees under the FLSA.

14

15

### 1.2    Employers

16

17        Next, the Court examines whether Defendants are employers under the FLSA.  The FLSA

18  defines an "employer" as "any person acting directly or indirectly in the interest of an employer

19  in relation to an employee." 29 U.S.C. § 203(d).  Whether an individual is an employer under

20  the FLSA is a question of law. *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986).

21        The Ninth Circuit takes an expansive view of the term "employer" under the FLSA. *Real*

22  *v. Driscoll Strawberry Assoc. Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).  For instance, the Ninth

23  Circuit has held that "[w]here an individual exercises 'control over the nature and structure of

24  the employment relationship,' or 'economic control' over the relationship, that individual is an

25  employer within the meaning of the [FLSA]." *Lambert v. Ackerly*, 180 F.3d 997, 1012 (9th Cir.

26  1999) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

27        Here, Maldonado and Rubio are corporate officers of SCMS.  (Memorandum, Ex. 3 at

28  RFA No. 2.)  By not responding to Plaintiff's RFA Nos. 35 and 37, Maldonado and Rubio

1 admitted that they hired and fired employees and set the work assignments, locations, schedules,

2 and pay practices for the Cleaners at all relevant times.  Based on this undisputed evidence, the

3 Court finds that Maldonado and Rubio exercised sufficient control over the nature and structure

4 of the employment relationship between SCMS and its employees to qualify as employers under

5 the FLSA.

6

7        **1.3    Commercial Enterprise**

8

9     Lastly, in determining whether the FLSA applies to Defendants, the Court must consider

10 whether Defendants operated a commercial enterprise.  The FLSA defines an enterprise as:

11

12         the related activities performed (either through unified operation or

13         common control) by any person or persons for a common business

14         purpose, and includes all such activities whether performed in one or

15         more establishments or by one or more corporate or other organizational

16         units including departments of an establishment operated through

17         leasing arrangements, but shall not include the related activities

18         performed for such enterprise by an independence contractor.

19

20 29 U.S.C. § 203(r).

21     The evidence establishes that the business purpose of SCMS is to provide house and

22 carpet cleaning services to clients.  By not responding to Plaintiff's RFA Nos. 1 and 3,

23 Defendants admitted that "SCMS was engaged in the provision of house and carpet cleaning

24 services" and that "SCMS employed persons to provide cleaning services to customers of

25 SCMS."  Further, Maldonado's and Rubio's undisputed actions as employers, as outlined in

26 Section 1.2, support a finding that they performed related activities that furthered the business

27 purpose of SCMS.  Thus, the Court finds that Defendants operated as an enterprise under the

28 FLSA.

1       The Court must next determine whether Defendants' enterprise qualifies as an

2 "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C.

3 § 206(a).  Such an enterprise:

4                (i) has employees engaged in commerce or in the production of goods

5                for commerce, or that has employees handling, selling, or otherwise

6                working on goods or materials that have been moved in or produced for

7                commerce by any person; and

8                (ii) is an enterprise whose annual gross volume of sales made or

9                business done is not less than $ 500,000 (exclusive of excise taxes at the

10                retail level that are separately stated);

11

12 29 U.S.C. § 203(s)(1)(A).  SCMS meets this definition because, by not responding to Plaintiff's

13 RFA's Nos. 30 and 54, Defendants admitted that (1) their employees handle and work with

14 cleaning supplies, which are products that have been produced for commerce, and (2) the gross

15 volume of sales made or business done by SCMS exceeded $500,000 for each relevant year.

16 Thus, Defendants operated a commercial enterprise under the FLSA.

17       The Court's analysis establishes that the Cleaners were employees, that Defendants were

18 employers, and that SCMS was an enterprise engaged in commerce under the FLSA for the

19 relevant period.  Thus, the FLSA's protections are available to the Cleaners.

20

21     **2.**     **DEFENDANTS' FLSA VIOLATIONS**

22

23       Having found that both the Cleaners and Defendants fall within the FLSA's purview, the

24 Court now considers the FLSA provisions at issue and whether Defendants violated these

25 provisions.  Specifically, Plaintiff asserts that Defendants violated 29 U.S.C. sections 206(a)(1),

26 207(a)(1), 211(c), 215(a)(2) and (a)(5).  29 U.S.C. section 206(a)(1) requires employers to pay

27 their employees a minimum wage.  For the relevant period, Section 206(a)(1) provided that

28 every employer pay each of his employees "not less than . . . $5.15 an hour beginning September

1 | 1, 1997."

2 |      29 U.S.C. section 207(a)(1) obligates employers to pay overtime wages. It provides: "No

3 | employer shall employ any of his employees . . . for a workweek longer than forty hours unless

4 | such employee receives compensation for his employment in excess of the hours above specified

5 | at a rate not less than one and one-half times the regular rate at which he is employed."

6 |      29 U.S.C. section 211(c) outlines the recordkeeping obligations of employers and

7 | provides:

8 |

9 |      Every employer . . . shall make, keep, and preserve such records of the

10 |      persons employed by him and of the wages, hours, and other conditions

11 |      and practices of employment maintained by him, and shall preserve such

12 |      records for such periods of time, and shall make such reports therefrom

13 |      to the Administrator as he shall prescribe by regulation or order as

14 |      necessary or appropriate for the enforcement of the provisions of this

15 |      chapter or the regulations or orders thereunder.

16 |

17 |      Lastly, sections 215(a)(2) and (a)(5) classify violations of prior FLSA provisions as

18 | prohibited acts. Specifically, these sections provide that it is unlawful for a person to violate any

19 | of the provisions of section 206, 207, and 211(c). 29 U.S.C. §§ 215(a)(2), (a)(5).

20 |      The evidence establishes that Defendants violated section 206(a)(1). By not responding

21 | to Plaintiff's RFA Nos. 25, 26, 27, and 47, Defendants admitted that they have continually

22 | violated the FLSA's minimum wage requirement of section 206(a)(1) from March 14, 2003 to

23 | the present. Thus, the Court finds that Defendants violated 29 U.S.C. section 206(a)(1).

24 |      The Court also finds that the evidence establishes that Defendants violated 29 U.S.C.

25 | section 207(a)(1). By not responding to Plaintiff's RFA Nos. 29 and 47, Defendants admitted

26 | that for the relevant period they failed to pay the Cleaners at a rate of one and one half their

27 | regular rate for hours worked over 40 hours in a workweek. Thus, the Court finds that

28 | Defendants violated 29 U.S.C. section 207(a)(1).

1     Plaintiff has also established that Defendants violated 29 U.S.C. section 211(c).  By not
2     responding to Plaintiff's RFA No. 53, Defendants admitted that SCMS failed to maintain the
3     records required by the FLSA of the wages paid to its employees and the hours they worked each
4     day and week.  Thus, the Court finds that Defendants violated 29 U.S.C. section 211(c).
5     Because the Court finds that Defendants violated 29 U.S.C. sections 206, 207, and 211(c),
6     the Court concludes that Defendants have committed prohibited acts under sections 215(a)(2)
7     and (a)(5).
8
9     **3.     REMEDIES**
10
11     Because Plaintiff, on behalf of the Cleaners, has established that Defendants have
12     violated several provisions of the FLSA, Plaintiff states that she is entitled to several forms of
13     relief.
14
15     **3.1     Damages for Backwages**
16
17     First, Plaintiff seeks to recover the unpaid compensation owed the Cleaners.  Under the
18     FLSA, the Secretary "may bring an action in any court of competent jurisdiction to recover the
19     amount of the unpaid minimum wages or overtime compensation" (collectively referred to as
20     "backwages").  U.S.C. § 216(c); *McLaughlin v. Seto*, 850 F.2d 586 (9th Cir. 1988) (court
21     awarded employees backwages and liquidated damages in an action brought by the Secretary on
22     their behalf).  But Plaintiff is unable to state an exact amount of overdue backwages owed the
23     Cleaners because Defendants failed to maintain accurate records of their employees.  In such a
24     situation, "an employee carries his burden under the FLSA if he shows he performed work for
25     which he was improperly compensated and produces some evidence to show the amount and
26     extent of that work 'as a matter of just and reasonable inference.'"  *McLaughlin*, 850 F.2d at 589
27     (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) and *Brock v. Seto*, 790
28     F.2d 1446, 1448 (9th Cir. 1986)).  Once the employee establishes a prima facie case, the burden

8

1  shifts to the employer to provide evidence either establishing the precise amount of work

2  performed or negating the reasonableness of the employee's figure. *Id.* "Where an employer

3  fails to meet its burden, the district court 'may then award damages to the employee, even

4  though the result be only approximate.'" *Id.* (quoting *Anderson*, 328 U.S. at 688).

5       Plaintiff established in section 2 that Defendants failed to maintain complete and accurate

6  time and payroll records for the Cleaners and that the Cleaners were undercompensated for work

7  they performed. "Once the employee has proved that he has performed work and has not been

8  paid in accordance with the FLSA, the fact of damage is certain. The only uncertainty is the

9  amount of damage." *Brock*, 790 F.2d at 1448 (emphasis in original). Thus, the Court examines

10  Plaintiff's evidence of the estimated amount of damage owed.

11       Plaintiff provides evidence of the amount and extent of work the Cleaners performed for

12  which they were improperly compensated. Specifically, Plaintiff relied on a declarations from

13  several of Defendants' past and current Cleaners. The declarations from Defendants' Cleaners

14  stated that they worked approximately 6 days per week for 10.5 hours per day. (*See* Declaration

15  of Nelly Jimenez ¶ 7; Declaration of Jose Luis Gonzalez ¶¶ 2, 8; Declaration of Brenda Jimenez

16  Estevez ¶¶ 5, 7; Declaration of Angelica Lopez ¶ 3; Declaration of Veronica Ramirez ¶ 5;

17  Declaration of Maria Rodriguez ¶ 6; Declaration of Rogelio Barrajas ¶ 15; Declaration of

18  Marcela Contreras ¶ 11; Declaration of Maria Gonzalez ¶¶ 4, 6; Declaration of Norma Araceli

19  Gamboa ¶¶ 7, 8.)

20       Next, Plaintiff provides a declaration from an investigator from the Wage-Hour Division

21  of the United States Department of Labor ("Wage Hour Investigator") who conducted a

22  thorough investigation in this case to establish the estimated amount of backwages owed to each

23  Cleaner. The Wage Hour Investigator calculated these estimates by relying on the interviews

24  with current and former employees and employment records. The Court finds that consideration

25  of the testimony of such an investigator is appropriate in determining the amount of backwages

26  due. Brock v. Seto, 790 F.2d 1446, 1449 (9th Cir. 1986); United States Department of Labor v.

27  Cole, 62 F.3d 775, 781 (6th Cir. 1995).

28       The Wage Hour Investigator established that SCMS required its Cleaners to work in

1    teams of at least two, designating one worker as team leader and the other(s) as helper(s).

2    (Kozlo Decl. ¶ 8).  Further, the Wage Hour Investigator established that SCMS did not pay or

3    maintain any records for the helpers.  (Kozlo Decl. ¶¶ 17, 27.)  To determine backwages, the

4    Wage Hour Investigator examined the Bills of Service for lead workers, which stated a list of all

5    jobs worked each workweek by each lead worker.  (Kozlo Decl. ¶ 29.) With such evidence, the

6    Wage Hour Investigator calculated the total amount each worker worked to identify overtime

7    workweeks.

8           The Wage Hour Investigator determined each lead worker's regular rate of compensation

9    for all weeks worked during the investigated period using the Forms 1099 supplied by SCMS.

10   (Kozlo Decl. ¶ 31.)  Then, the Wage Hour Investigator divided the amount listed on the Form

11   1099 for each lead worker by two to estimate the lead worker's and helper's earnings.  (Kozlo

12   Decl. ¶ 31).  The Wage Hour Investigator used this information to calculate the minimum wage

13   underpayments and unpaid overtime backwages for each employee for all weeks worked during

14   the investigated period.  (Kozlo Decl. ¶¶ 32, 33.)  These calculations were provided in the Wage

15   Hour Investigator's supporting declaration.  (Kozlo Decl., Ex. 3D.)

16          The Wage Hour Investigator also calculated an approximation of the backwages owed for

17   the time period at issue in this case that was not included in his own investigation.  The Wage

18   Hour Investigator calculated an amount of backwages for the period of March 14, 2005 to

19   December 29, 2006 proportionate to those calculated for the investigated period.  (Kozlo Decl.

20   ¶ 37.)  This calculation is supported by Plaintiff's declarations from employees, which evidence

21   that SCMS has not materially altered the workweeks of its employees or its pay practices since

22   the investigation.  (*See* Declaration of Jose Luis Gonzalez; Declaration of Brenda Jimenez

23   Estevez; Declaration of Marcela Contreras; Declaration of Maria Gonzalez; Declaration of

24   Norma Araceli Gamboa.)  Further, by not responding to RFA No. 48, Defendants admitted that

25   "[u]nderpayments of wages due to [Defendants'] violation of the minimum wage and overtime

26   provisions of the Act for the period from 3/14/05 to the present are proportionate to the

27   underpayments owed for the period of 3/14/03 to 3/14/05."

28          The Court finds that this evidence is sufficient to determine a just and reasonable amount

of backwages due to the identified employees who submitted declarations as well as those who have not submitted declarations.  A court may award backwages to non-testifying employees "based upon the fairly representative testimony of other employees." *McLaughlin*, 850 F.2d at 589.  After analyzing Plaintiff's declarations from employees and finding them all to be nearly identical in their descriptions of both a typical workweek and SCMS' pay practices, the Court finds that the testimony before it is representative of employees who did not submit declarations.

Further, the Court finds that this evidence supports an award of backwages to unidentified helper workers.  "Damage awards for unidentified employees are within the scope of the FLSA, so long as a preponderance of the evidence establishes the existence, work hours, and wages of these employees." *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654, 658 (6th Cir. 1994); *see also Martin v. Deiriggi*, 985 F.2d 129, 132 (4th Cir. 1992) ("To support an award for backwages, the Secretary is not required to identify with specificity each and every employee who was undercompensated and for what time period.").  Here, Plaintiff provides evidence that all helpers were not individually compensated for their employment. (Declaration of Brenda Jimenez Estevez ¶¶ 2-5; Declaration of Veronica Ramirez ¶¶ 2, 4; Declaration of Maria Rodriguez ¶¶ 2-3, 12; Declaration of Marcela Contreras ¶¶ 2-3.)  The Wage Hour Investigator used the Bills of Service and Forms 1099 issued by Defendants to the lead workers to reconstruct the hours worked and wages paid to these employees. (Kozlo Decl. ¶¶ 29, 31, Ex. 3D.)  The Court credits this methodology and finds that it is an appropriate basis to award backwages to undocumented workers.

After reviewing this information, the Wage Hour investigator estimated that $3,467,789.44 of backwages is due to the documented and undocumented employees for the period of March 14, 2003 to December 29, 2006. (Kozlo Decl., Ex. 3D.)  The Court finds that the evidence provided supports the conclusion that $3,467,789.44 is a just and reasonable estimate of the backwages owed to the Cleaners.  Further, by not responding to Plaintiff's RFA Nos. 42, 43, and 49, Defendants admitted that they are liable to the Cleaners for this amount in backwages.  Thus, Defendants are jointly and severally liable for unpaid minimum wages and

11

1  overtime compensation owed to their employees totaling $3,467,789.44.

2

3       **3.2    Liquidated Damages**

4

5

6       Plaintiff also requests $1,058,972.81 in liquidated damages under 29 U.S.C. section

7  216(c) on behalf of the employees named in the Complaint.  (Plaintiff's P&A's 31:35-32:1.)

8  Under Section 216(c), the Secretary may bring an action to recover liquidated damages in an

9  amount equaling the total backwages owed these employees.  The Ninth Circuit has recognized

10 that

11              the liquidated damages provision 'constitutes a Congressional

12              recognition that failure to pay the statutory minimum on time may be so

13              detrimental to maintenance of the minimum standard of living necessary

14              for health, efficiency, and general well-being of workers and to the free

15              flow of commerce, that double payment must be made in the event of

16              delay in order to insure restoration of the worker to that minimum

17              standard of well-being.'

18 *Biggs v. Wilson*, 1 F.3d 1537, 1541 (9th Cir. 1993) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324

19 U.S. 697, 707 (1945)).  However, an employer may avoid liquidated damages by demonstrating

20 that he has acted in good faith and with a reasonable belief that his conduct conformed with the

21 FLSA. 29 U.S.C. § 260.  "'Absent such a showing, liquidated damages are mandatory.'" *Bratt*

22 *v. County of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990) (quoting *Equal Employment*

23 *Opportunity Comm'n v. First Citizens Bank*, 758 F.2d 397, 403 (9th Cir. 1985)).

24       The Court finds that Defendants have not met their burden to avoid liquidated damages.

25 As discussed in Section 3.1, Plaintiff has established that all SCMS employees are entitled to

26 backwages.  Defendants have provided no defense and have shown neither good faith nor a

27 reasonable belief that their conduct conformed with the FLSA.  At the very least, the Court finds

28

12

that Defendants knew of the minimum wage, overtime, and recordkeeping requirement of the FLSA after the Wage Hour Investigator confronted them during its investigation. Additionally, by not responding to Plaintiff's RFA No. 47, Defendants admitted that they were continually aware of their FLSA violations over the relevant period. Thus, the Court finds that an award of liquidated damages is appropriate.

Plaintiff provides evidence that Defendants are liable for $1,058,972.81 in liquidated damages owed to documented employees. (Kozlo Decl., Ex. 17.) Further, by not responding to Plaintiff's RFA No. 46, Defendants admitted that they are liable for the specified amount in liquidated damages. Thus, the Court finds Defendants jointly and severally liable for $1,058,972.81 in liquidated damages.

### 3.3    Injunction

Plaintiff seeks two types of injunctions against Defendants under 29 U.S.C. section 217. "Traditional equity grounds need not be proven in order for an injunction that is authorized by statute to be issued." *United States v. H & L Schwartz, Inc.*, No. 84-5497, 1987 U.S. Dist. LEXIS 14478, at *21 (C.D. Cal. 1987). The Court finds that both a restitutionary and a prospective injunction are needed to adequately redress Defendants' FLSA violations.

#### 3.3.1   Restitutionary Injunction

Plaintiff asks the Court to enjoin Defendants from withholding the backwages and liquidated damages owed the Cleaners. A district court has jurisdiction to restrain "any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under [the FLSA.]" 29 U.S.C. § 217. The Ninth Circuit has held that "restitutionary injunctions are an essential tool in effectuating the policy of the [FLSA]." *Marshall v. Chala Enterprise, Inc.*, 645 F.2d 799, 803 (9th Cir. 1981). Thus, to prevent unjust enrichment and to ensure that SCMS' employees receive the payments that Congress has

1 | determined they are entitled to receive, the Court restrains Defendants from withholding the
2 | payments, outlined in Sections 3.1 and 3.2, owed to Plaintiff on behalf of these workers.

### 3.3.2   Prospective Injunction

The Court also finds that a prospective injunction is appropriate. The FLSA authorizes a district court to restrain violations of 29 U.S.C. section 215. 29 U.S.C. § 217. The Supreme Court has expressly recognized the discretionary nature of a prospective injunction restraining future violations of the FLSA. *See Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 215 (1959). Such an injunction, "'subjects the defendants to no penalty, to no hardship. It requires the defendants to do what the [FLSA] requires anyway to comply with the law.'" *Marshall*, 645 F.2d at 804 (quoting *Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962)).

Here, Defendants' violations constitute prohibited acts under Sections 215(a)(2) and 215(a)(5). Plaintiff has established that Defendants were notified that their business practices violated the FLSA but refused to change their behavior. (Kozlo Decl. ¶¶ 35-36.) Further, Plaintiff has established that Defendants are unlikely to comply with the FLSA's provisions in the future. Thus, the Court permanently enjoins and restrains Defendants from violating 29 U.S.C. sections 215(a)(2) and (a)(5).

//
//
//
//
//
//
//
//
//

**DISPOSITION**

For the reasons stated, Plaintiff's Motion is GRANTED.  The Court awards $3,467,789.44 in backwages and $1,058,972.81 in liquidated damages.  Further, the Court enjoins Defendants from withholding the combined amount of backwages and liquidated damages, $4,526,762.25, due Plaintiff on behalf of the Cleaners.  The Court also permanently enjoins Defendants from violating the minimum wage, overtime, and recordkeeping provisions of the FLSA.

IT IS SO ORDERED.

DATED: August 20, 2007

Andrew J. Guilford
United States District Judge